UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH J. ROMBAUT, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CONCEPTS LLC, a Delaware Limited Liability Company; and DOES 1 through 50,<br><br>Defendants. | Case No. 2:25-cv-02802-AB (Ex)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. No. 22]** |

Plaintiff Deborah J. Rombaut ("Plaintiff"), on behalf of herself and all other similarly situated employees within the State of California, filed a Complaint ("Compl.," Dkt. No. 1-3) in the Los Angeles County Superior Court alleging that Defendant U.S. Concepts, LLC ("Defendant") violated various California labor laws. *See* Compl. ¶ 2. Defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Before the Court is Plaintiff's Motion to Remand. ("Mot.," Dkt. No. 11.) Defendant filed an Opposition ("Opp.," Dkt. No. 15), and Plaintiff filed a Reply (Dkt. No. 17). For the following reasons, the Court **DENIES** Plaintiff's Motion.

## I.     BACKGROUND

From February 6, 2021, to February 28, 2025, Plaintiff was employed by Defendant as a non-exempt Brand Ambassador and seeks to represent a class of individuals who are or were employed by Defendant as non-exempt employees in California during the class period. *See* Compl. ¶¶ 3, 21. According to Plaintiff, Defendant violated California labor law by failing to pay minimum wage and failing to compensate for all hours worked, including overtime. *Id.* ¶¶ 24, 32. Plaintiff further alleges that Defendant failed to provide legally required rest or meal breaks. *Id.* ¶¶ 38, 44. In addition, Plaintiff claims Defendant failed to pay wages in a timely manner both during employment (i.e., seven calendar days following the close of payroll) and at separation (i.e., seventy-two hours after resignation). *Id.* ¶¶ 52, 54. Plaintiff also alleges that Defendant did not fully reimburse Plaintiff for work-related expenses. *Id.* ¶ 58. Defendant purportedly failed to provide accurate itemized wage statements, which Plaintiff attributes to Defendant's failure to keep accurate bookkeeping records. *Id.* ¶¶ 60, 64. Last, Plaintiff alleges Defendant failed to provide adequate seating throughout the course of the job. *Id.* ¶ 66.

Based on these allegations, the Complaint alleges the following ten (10) causes of action: (1) Failure to Pay All Minimum Wages (Cal. Lab. Code §1197); (2) Failure to Pay All Overtime Wages (Cal. Lab. Code. §§ 204, 510, 1194, and 1198); (3) Failure to Provide Rest Periods and Pay Missed Rest Period Premiums (Cal Lab. Code § 226.7 and 512); (4) Failure to Provide Meal Periods and Pay Missed Meal Period Premiums (Cal. Lab. Code § 226.7); (5) Failure to Maintain Employment Records (Cal. Lab. Code § 1174(d)); (6) Failure to Pay Wages Timely during Employment (Cal. Lab. Code §§ 210 and 218.5); (7) Failure to Pay All Wages Earned and Unpaid at Separation (Cal. Lab. Code §§ 201-3); (8) Failure to Indemnify All Necessary Business Expenditures (Cal. Lab. Code § 2802, subds. (b), (c)); (9) Failure to Furnish Accurate Itemized Wage Statements (Cal. Lab. Code § 226 subds. (a)); and (10) Violations of California's Unfair Competition Law (Cal. Bus. and Pro. Code § 17200-

10) *Id.* ¶ 79-119.

On March 31, 2025, Defendant filed a Notice of Removal ("NOR," Dkt. No. 1), removing the case to federal court pursuant to CAFA. Plaintiff now moves to remand the case back to state court on the grounds that Defendant has not satisfied the requisite amount in controversy under CAFA, and Defendant failed to timely remove the case. According to Plaintiff, Defendant's Notice of Removal relies on inflated estimates regarding unpaid working hours, non-compliant meal periods and rest periods, waiting time penalties, failure to timely pay wages, wage statements, and attorneys' fees.

## II.   LEGAL STANDARD

The Class Action Fairness Act ("CAFA") vests federal district courts with original jurisdiction over class actions in which (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007). There is no presumption against removal in cases invoking CAFA, "which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). "CAFA's primary objective" is to "ensur[e] 'Federal court consideration of interstate cases of national importance.'" *Id.* (citing § 2(b)(2), 119 Stat. 5).

A removing defendant bears the burden of establishing federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy

1  by a preponderance of the evidence. *Id.* at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); *see*
2  *Ibarra*, 775 F.3d at 1195. A defendant may prove the amount in controversy by a
3  declaration or affidavit. *See Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at
4  *3 (C.D. Cal. April 9, 2019). The Court should "treat the removal petition as if it had
5  been amended to include the relevant information contained in the later-filed
6  affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969); *see also Cohn v.*
7  *Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in
8  construing [defendant's] opposition as an amendment to its notice of removal.").

9        The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198
10 (citing *Dart Cherokee*, 574 U.S. at 89). "The parties may submit evidence outside the
11 complaint, including affidavits or declarations, or other 'summary-judgment-type
12 evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197
13 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).
14 Once "both sides submit proof [] the court then decides where the preponderance
15 lies." *Ibarra*, 775 F.3d at 1198. "Under this system, a defendant cannot establish
16 removal jurisdiction by mere speculation and conjecture, with unreasonable
17 assumptions." *Id.* at 1197.

18    **III.    DISCUSSION**
19      **A. Evidentiary Objections**
20       In evaluating the existence of diversity jurisdiction on a motion to remand,
21 courts "consider . . . summary-judgment-type evidence relevant to the amount in
22 controversy at the time of removal." *Fritsch v. Swift Transportation Co. of Arizona,*
23 *LLC*, 899 F.3d 785, 793 (9th Cir. 2018). "An affidavit or declaration used to support
24 or oppose a motion [for summary judgment] must . . . set out facts that would be [but
25 not necessarily are] admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). At
26 summary judgment, a district court may consider hearsay evidence submitted in an
27 inadmissible form, so long as the underlying evidence could be provided in an
28 admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d

1098, 1110 (9th Cir. 2016).

Plaintiff filed evidentiary objections to Defendants' evidence, specifically, parts of the Morales Declaration. (Dkt. No. 11-4.) Plaintiff objects that parts of the Morales Declaration lack foundation, are factual conclusions, lack personal knowledge, lack authentication, and call for speculation. *Id*. The objections of the Morales Declaration are overruled.

Defendant provided a supplemental declaration ("Morales Suppl. Decl.," Dkt. No. 15-3) that addressed Plaintiff's objections. As to the grounds for the first two material objections, Valerie Morales, as Director of Payroll, was speaking to her personal knowledge and credentials. *See* Morales Suppl. Decl., ¶¶ 1-10. The Court rejects Plaintiff's grounds for the third material objection because Morales establishes proper foundation in her supplemental declaration. There, she describes the basis and boundaries of her personal knowledge and personal access to business records maintained in the ordinary course of business operations. *Id*. The remaining grounds are overruled for the same reasons. For the fourth material objection, Morales' testimony on her personal knowledge and credentials lays proper foundation. There is no basis for the remaining grounds as Morales has testified that she has access to repositories of business records, obtained them, and downloaded them into ten specifically identified Excel files. *Id*. ¶¶ 8-9.

Accordingly, the Court may consider this evidence. Plaintiff's evidentiary objections are **OVERRULED**.

**B. Timeliness of Removal**

Removal under CAFA must be initiated "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Then, three jurisdictional requirements must be satisfied: (1) the parties must be diverse, (2) the proposed class must be over 100 members, and (3) the aggregated amount-in-controversy must exceed $5 million dollars. *Id.* § 1332(d)(2),

(d)(5), (d)(6). If the initial documents do not facially satisfy the elements of removal, a defendant is able to remove a suit within thirty days "from which it is ascertainable that the case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013); *see* 28 U.S.C. § 1446(b)(3).

Here, though Defendant's removal of the case came substantially after the initial thirty-day window from when Plaintiff filed her complaint, Plaintiff's Complaint does not affirmatively reveal removability under CAFA. Because Plaintiff's expected damages are not explicitly stated in the initial pleading, Defendant was required to independently assess the viability of removal under CAFA. Defendant, through its custodian of records, accessed raw data/business records from multiple repositories of electronic information and provide that data to Defendant's expert, Zach Lewis. Opp. at 12:19-23. The expert then used the data to apply the violation rates and calculate the amount in controversy. *Id*. at 12:23-24. This discovery related to the amount in controversy supports the Court's finding that Defendant properly removed the matter within thirty days of determining that it could do so properly. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). As such, Defendant's removal was timely.

### C. Amount in Controversy

The parties do not dispute that Plaintiff's class exceeds one hundred members, and that the parties are minimally diverse. The only dispute is whether the amount in controversy is satisfied. Plaintiff's Complaint alleges that "the amount in controversy for Plaintiff's and the Class Members' claims, in aggregate, is less than $5 million," Compl. ¶ 9, while Defendant contends that it exceeds $5 million. In its Notice of Removal, Defendant estimates the amount in controversy to be at least $5,958,868. *See* NOR ¶ 82.

///

///

///

6

Defendant estimates these amounts to be:

| Claim | Defendant's Estimated Amount in Controversy |
|---|---|
| Unpaid Wages | $1,276,673 |
| Overtime Wages | $309,585 |
| Rest Breaks | $542,312 |
| Meal Periods | $351,359 |
| Waiting Time Penalties | $1,137,935 |
| Failure to Maintain Accurate Employment Records | $144,500 |
| Untimely Pay During Employment | $577,300 |
| Unreimbursed Business Expenses | $138,780 |
| Inaccurate Wage Statements | $288,650 |
| Attorneys' Fees | $1,191,773 |
| **Total** | **$5,958,868** |

First, consistent with the above-referenced authorities, the Court will treat the Defendant's Notice of Removal to have been amended by, and to include the materials Defendant filed with, its Opposition. The claims contributing to the amount in controversy are Plaintiff's claims for unpaid wages, overtime wages, rest breaks, meal periods, waiting time penalties, failure to maintain accurate employment records, untimely pay during employment, unreimbursed business expenses, inaccurate wage statements and attorneys' fees. Because reasonable attorneys' fees are recoverable pursuant to Cal. Lab. Code § 2802 and Cal. Civ. Code § 1021.5, they must be included in the amount in controversy. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (the amount in controversy includes "attorneys' fees awarded under fee shifting statutes"); *Fritsch*, 899 F.3d at 794 (when "the law entitles

[the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").

Plaintiff does not challenge Defendant's estimate for failure to maintain accurate employment records, untimely pay during employment, unreimbursed business expenses, and inaccurate wage statements, but attacks aspects of all other calculations. Specifically, Plaintiff argues Defendant's amount in controversy calculation is based on unreasonable assumptions and unsupported by evidence. *See* Mot. 1:9-1:18. Plaintiff challenges Defendant's calculations as follows:

- One hour of unpaid time a week, a minimum wage violation = $638,336.59
- One hour of unpaid overtime a week, an overtime violation = $309,585.39
- Meal and rest period violation rates of 20% = $893,952.10
- Reimbursement of business expenses at $20 per month = $138,780.00
- Waiting time violation rates of 100% = $1,137,935.00
- Wage statement violation rates of 100% = $288,650.00
- Attorneys' fees at a rate of 25% = $1,191,773.73

With its Notice of Removal, Defendant filed declarations estimating, based on its records, the number of employees in the classes, the number of work weeks in issue, average hourly rates, and other data necessary to calculate the amounts in controversy. In its Opposition, Defendant explains it relied on assumed violation rates because Plaintiff's complaint did not provide the frequency of alleged violations. *See* Opp. 13:16-13:18. Defendant states it relied on the following evidence in support of its assumed violation rates: (1) "electronic data maintained in the ordinary court of Defendant's business;" (2) "a custodian of records declaration and evidentiary foundation establishing that the data was pulled from reliable business records;" (3) "an economist who specializes in applying his data analytics expertise to wage-and-hour matters;" and (4) a declaration from Defendant's Director of Payroll. *See* Opp. at 14. In her Reply, Plaintiff reiterates that Defendant has not established the requisite

amount in controversy because it did not provide "actual" evidence. *See* Reply 3:16-3:19. Having considered the arguments and evidence, the Court finds that Defendant has satisfied its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### 1. Amount in Controversy Estimates Post-*Rose Hills*

If a defendant wants to pursue a federal forum under CAFA, the defendant has the burden to put forward evidence showing the amount in controversy exceeds $5 million. *Ibarra*, 775 F.3d. at 1197. A defendant's proposed controversy calculations "need some reasonable ground underlying them." *Id.* A plaintiff, as here, can challenge a defendant's assertion of the amount in controversy, but when doing so, must then submit their own proof to the court. *Id.*

Plaintiff argues that Defendant has not met its burden to show that the amount in controversy exceeds CAFA's $5 million threshold because the assumptions underlying Defendant's calculations are unreasonable and unsupported by any evidence. Mot. 1:9-1:18. As noted above, a removing CAFA defendant may not establish the amount in controversy "by mere speculation and conjecture, [or] with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197–98. A defendant must instead rely on "real evidence and the reality of what is at stake in the litigation." *Id*.

However, the Ninth Circuit recently shed light on how district courts are to assess the reasonableness of a removing defendant's assumptions in a CAFA case:

> What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014) (noting that a CAFA defendant has "access to its own employment records" and can provide information derived from those records "without conceding liability or being unduly burdened"). By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—

9

because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.

*Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (emphasis in original). The *Perez* court went on to clarify that the assumptions underlying a removing defendant's violation rates "do not necessarily need to be supported by evidence" if the assumptions are "founded on the allegations of the complaint." *Id*. The district court must determine, then, whether the defendant's violation-rate assumptions are based on a "reasonable interpretation of the complaint." *Id*. at 809. In so doing, district courts should bear in mind that an assumption "is not unreasonable simply because another equally valid assumption" may be drawn from the complaint. *Id*. at 809.

Here, Defendant contends that Plaintiff's allegations of a policy and practice of violating California labor law justify assuming the following violation rates: one unpaid hour of unpaid time; one hour of unpaid overtime per week; 20% meal period violation rate; 20% rest period violation rate; 100% waiting time penalty violation rate; and 25% benchmark for attorneys' fees. In response, Plaintiff does not offer any evidence that the amount in controversy is below the necessary $5 million. Plaintiff offers no data, affidavits, nor evidence for the Court to consider in the alternative. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("And if [Plaintiff] believed that some other assumption would have been more reasonable, she was free to propose that rate."); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite amount.") (internal quotations omitted). The Court therefore has no other number to turn to except for Defendant's asserted value. The Court assesses each of Defendant's proffered calculations in turn to see if they are justified by the allegations made in the Complaint. *See Perez*, 131 F.4th at 809 (violation rates must be justified).

10

Applying the above principles, the Court concludes that the numbers proffered by Defendant are reasonably supported by the allegations in Plaintiff's complaint. While Defendant's numbers are clearly calculated in a way to maximize the amount in controversy, they are, for the most part, consistent with the general language used by Plaintiff in describing the frequency of alleged violations and are thus permissible. *See Gist-Reed v. Alpha Analytical Laboratories, Inc.*, 2025 WL 1572929, at *3. Therefore, as discussed below, Defendant has met its burden to satisfy the amount in controversy.

**1. Minimum Wage Violations is Reasonable**

Plaintiff argues that Defendant's use of a 20% violation rate, equating to one unpaid hour per week, to calculate unpaid wages is based on "mere conjecture and generalizations," rather than evidence, "about the number or lengths of shifts worked by the putative class members." Mot. 8:17-8:19 (citing NOR, Morales Decl., Dkt. No.1-8, at 2-3). However, Plaintiff's Complaint offers no guidance as to the frequency of the alleged violations, relying instead on allegations that Defendants did not compensate "for all hours worked" to assert that Defendants' assumed 20% violation rate is unreasonable. Compl. ¶ 24.

The assumed violation rate of 20% is reasonable, particularly in light of Plaintiff's failure to offer any alternative limiting principle or rebuttal evidence. *See Mariscal, LLC*, 2021 WL 1400892, at *3 (holding defendant's assumed violation rate of 25% reasonable because plaintiff did not offer evidence that restricts or limits the violation rate in the complaint or moving papers); *Stanley v. Distribution Alternatives, Inc.*, No. 17-cv-2173-AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting defendant's assumptions regarding meal period violation rates and observing that plaintiff provided no allegations concerning frequency of the alleged violations and no competing evidence that would suggest lower violate rates). Defendant's proposed violation rate is considered reasonable if it is justified by the allegations in the complaint. *Id.*

///

### 2. Overtime Violations

Further, Plaintiff's Complaint alleges, "Class Members *periodically* worked hours that entitled them to overtime compensation," and "Defendants [] had a *policy and practice* of denying meal breaks." Compl. ¶¶ 32, 33 (emphasis added). Plaintiff counters that she does not allege that class members were not compensated for all overtime hours but instead states they "were not *fully* compensated for those hours." Reply at 4:25-4:26. Plaintiff similarly argues that the Defendant's overtime calculation inaccurately relies on the same 20% violation rate, or one hour of unpaid overtime.

Here, Defendant bases its estimate on Plaintiff's allegations in her complaint and are thus reasonable. There is no limiting language attached to "periodically." Though it is true that other, less generous valuations could be consistent with a "periodic" practice, the Defendant need only show that its interpretation is a reasonable one. *Perez*, 131 F.4th at 809. The Court cannot say that Plaintiff's allegations that the violations occurred periodically forecloses the possibility that the violations happened at roughly a twenty percent rate, and thus, Defendant's calculations are in line with the described violations. *See Perez*, 131 F.4th at 809.

### 3. Meal and Rest Period Violations

Plaintiff argues that Defendant's calculations of damages for meal and rest periods are inflated because Defendant uses a 20% violation rate. Plaintiff's Complaint states that Class Members were "often" denied meal and rest periods and Defendants had a "policy and practice" of denying these breaks. *See* Compl. ¶¶ 33, 38, 46, and 90. Plaintiff alleges that Defendant often did not provide a meal break before the fifth hour of work or a second meal break before the tenth hour of work. *See* Compl. ¶ 46. To compute its calculation, Defendant applied one missed meal premium for every shift that had a meal-eligible break (i.e., a shift more than 5 hours). *See* NOR, Lewis Decl. ¶ 15. Similarly, Defendant estimates its rest period violations by applying one missed rest break premium for every eligible shift (i.e., a shift of at

least 3.5 hours). *Id.* ¶ 18. Plaintiff's allegations that the violations occurred at "often" and that Defendant had a "policy and practice" of denying these breaks does not foreclose the possibility that the violation happened at every opportunity that arose, and thus, Defendant's calculations are in line with the described violations. *See Perez*, 131 F.4th at 809.

Consistent with the above-referenced authorities and Plaintiff's failure to provide any rebuttal evidence, the Court finds the 20% violation reasonable and rejects Plaintiff's claim.

**4. Waiting Time Penalties are Sufficiently Supported.**

Cal. Labor Code § 203 provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. Here, Plaintiff asserts that Defendants improperly relied on a 100% violation rate (i.e., all terminated Class Members) and a maximum 30-pay penalty in estimating the waiting time penalties.

Plaintiff argues Defendant did not provide sufficient evidence to claim a 100% violation rate. Plaintiff states that the testimony from Defendant's expert data analyst does not support the violation rate because he does not explain why all 364 putative employees would be entitled to compensation from waiting time penalties. Mot. 16:9-16:10. But Defendant is not "obligated to research, state, and prove the plaintiff's claims for damages." *Mortley v. Express Pipe & Supply Co.*, No. 17-cv-1938-JLS-JDE, 2018 WL 708115, at *2 (C.D. Cal. Feb. 5, 2018). Instead, Defendant can make reasonable assumptions about the violation rates. *See Arias*, 936 F.3d at 922. Here, Defendant relies on language from the Complaint such as, "the unlawful acts alleged herein have a direct effect *on all* of Defendants' employees," to assume the 100% violation rate. Compl. ¶ 18 (emphasis added). The declarations from both Defendant's data analyst expert and Director of Payroll then serve as additional evidence to support the reasonable assumptions of the violation rate. Plaintiff alleges systemic

13

violations, and without a specific subclass mentioned in the Complaint, Defendant reasonably concluded all terminated employees were owed some amount of compensation. *See*, e.g., *Marquez v. Southwire Co., LLC*, No. 21-cv-252-JGB (SPx), 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations."). Defendant's expert identified 364 terminated Class Members in the relevant period and multiplied each employee's lowest hourly rate by their average daily hours by 30 days to calculate the waiting time penalties. *See* Opp. 17:21-17:27. Defendant reasonably assumes a 100% violation rate and uses conservative figures to calculate the total estimate.

Plaintiff also argues that Defendants improperly assumed and provided no evidence in support of its assumption that each class member would be owed the maximum statutory penalty. Mot. 16:13-16:15; see *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) ("Archstone assumes that each employee would be entitled to the maximum statutory penalty but provides no evidence supporting that assertion."). To the contrary, Defendant relies on assumptions tied to the Complaint, such as, "Defendants have failed to pay [terminated] Class Members whose sums were certain at the time of termination within at least seventy-two hours of their resignation *and* have failed to pay those sums for thirty days thereafter" (emphasis added). Plaintiff expressly states the thirty-day penalty applies without providing evidence that the penalty only applies to a subgroup of Class Members. The maximum statutory penalty therefore is not "assumed" at all; rather, such damages are evident from the face of the Complaint. "[A] removing defendant may rely on some assumptions to establish the amount in controversy." *Perez*, 131 F.4th at 809. Defendant's numbers, while possibly inflated, have not been shown to be unreasonable in light of the allegations in the operative complaint, especially given the lack of other number or evidence provided by

Plaintiff. Accordingly, Defendants have properly supported their calculation of damages based on waiting time penalties.

### 5. Reimbursement of Business Expenses

Plaintiff's Complaint alleges that "the Class Members" were denied reimbursement relating to cell phones, personal computer use, and mileage. Compl., ¶ 112. Plaintiff does not allege that such expenses were minimal, sporadic, or de minimis. Rather, Plaintiff alleges that all of these categories of expenses were "necessary," a "requirement of performing their job duties," and "required to perform their work." *Id*.

Defendant uses an estimate of $20.00 per month to calculate all unreimbursed expenses owed to Plaintiff and Class Members. Plaintiff challenges this estimate, arguing that the violation rate is unreliable due to Defendant's failure to provide adequate evidence or justification. Mot. 13:27-14:4. Defendant counters by citing District Court cases where a $20 estimate was considered "reasonable" and "conservative." *See Shachno v. Marriott Int'l, Inc.*, No. 22-cv-1215 TWR (JLB), 2023 WL 316367 at *11-12 (S.D. Cal. Jan. 19, 2023); *Cavada, supra*, 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019). Plaintiff, meanwhile, does not offer an alternative figure. Considering all the arguments presented, the Court finds no basis to reject the $20.00 violation rate. Thus, Defendant has sufficiently supported their calculation of unreimbursed business expenses.

### 6. Wage Statement Violation Rates

Plaintiff's Complaint alleges, on a class-wide basis, that Defendant's wage statements were both facially inaccurate and derivatively inaccurate as a result of unpaid wages, overtime wages, and unpaid meal and rest period premiums.

First, Plaintiff alleges the wage statements were facially inaccurate because "Defendants issued and continues to issue wage statements to its non-exempt employees including Plaintiff and the other Class Members that are inadequate under Labor Code section 226, subdivision (a)". Compl. ¶ 116. Second, Plaintiff then alleges

that wage statements were inaccurate on a derivative basis because "[b]y failing to pay Plaintiff and other Class Members properly [with respect to unpaid wages, unpaid overtime wages, and unpaid break premiums], Defendants failed to include required information in their wage statements." *Id*. Plaintiff then alleges that "Defendants' failure to comply with Labor Code section 226, subdivision (a), of the Labor Code was knowing and intentional." *Id*., at ¶ 117.

Defendant used a 100% violation rate, equating to the maximum fine of $50.00, to calculate the wage statement violation penalties. Plaintiff contends that Defendant failed to provide summary judgment-type evidence justifying the application of the maximum penalty, and argues, that the Court should therefore disregard Defendant's estimate of $288,650.00. Mot. 17:16-17:18. However, in light of *Perez*, Defendant's proposed violation rate may be considered reasonable if it is anchored to the allegations in the Complaint. Here, Plaintiff alleges systemic substantive or derivative wage statement violations in its Complaint, thereby, justifying the application of a 100% violation rate. Accordingly, the Court finds that Defendant has properly supported its damages calculation for wage statement violations.

### 7. Attorneys' Fee Calculation

Defendant calculated the amount put in controversy by the claim for attorneys' fees using the 25% benchmark that applies to common fund class action settlements, which would yield $1,191,773. This is a reasonable estimate of the amount in controversy for the attorneys' fees claim in this case.

Districts courts, including this one, have used the 25% as a "benchmark level" to estimate the amount put in controversy by attorneys' fee shifting statutes. *Garibay*, 539 Fed Appx. 763, 764. *See also*, *Rwomwijhu v. SMX, LLC*, No. CV-16-08105-AB (PJWx), 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017), *Sanchez v. Russell Sigler, Inc.*, No. CV-15-01350-AB (PLAx), 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015). A benchmark approach is appropriate here because Defendant's estimate is derived from supported damages calculations, and Plaintiff offers no contrary

evidence, such as lodestar figures. *See, e.g.*, *Tijerina v. United Airlines, Inc.*, No. 24-CV-02466-BEN-SBC, 2025 WL 1355308, at *4 (S.D. Cal. May 9, 2025). In California, courts use the lodestar method to calculate attorneys' fees. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001). The lodestar figure is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *See Candle v. Bristow Optical Co. Inc.,* 224 F.3d 1014, 1028 (9th Cir. 2000). Without proposed figures to apply the lodestar method, the Court relies on Defendant's supported 25% benchmark level to calculate the attorneys' fees. *But see*, e.g., *Gurzenski v. Delta Air Lines, Inc.*, No. 221CV05959ABJEMX, 2021 WL 5299240 (C.D. Cal. Nov. 12, 2021) (applying the lodestar method with figures provided by Plaintiff in lieu of the 25% benchmark level).

Since the Court finds that the amount in controversy, that is $4,767,094, is supported by a preponderance of the evidence, the Court includes the $1,191,773 of attorneys' fees in the total amount in controversy.

In sum, the Court finds that all of Defendant's calculations reasonable and sufficiently supported and concludes that the total amount in controversy exceeds the $5 million threshold under CAFA.

### IV.   CONCLUSION

Defendant has met its burden of establishing by a preponderance of the evidence that the threshold is satisfied. Accordingly, the Court has subject matter jurisdiction over Plaintiff's claims. The Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

Dated: July 18, 2025

_____
HON. ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE